NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

HAWTHORNE AVIATION, Respondent.

No. 9899.

United States Court of Appeals Tenth Circuit.

Jan. 29, 1969.

Rehearing Denied March 17, 1969.

6. Barnett v. United States, 5th Cir. 1967, 384 F.2d 848.

Ronald R. Helveston (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Michael N. Sohn, Washington, D. C., on brief), for petitioner.

John Edward Price, Atty., and John Bernard Nelson, Assoc., Fort Worth, Texas, for respondent.

Before LEWIS and HICKEY, Circuit Judges, and THEIS, Judge.

DAVID T. LEWIS, Circuit Judge.

■ The National Labor Relations Board seeks an order of this court directing enforcement of a Board order requiring Hawthorne Aviation to take customary remedial steps for violation of sections 8(a) (1) and 8(a) (5) of the National Labor Relations Act. The respondent does not contest that portion of the order pertaining to section 8(a) (1) for the evidence clearly sustains the Board finding that Hawthorne maintained a rule prohibiting solicitation of Union membership on non-work time, created an impression of surveillance of employee organization activities, prom-

ised benefits and threatened reprisals, announced improvements in employee benefits during an organization campaign, and advised employees that they did not have to talk to Board agents investigating the dispute. Accordingly that portion of the order will be enforced. The remainder of the Board order requiring Hawthorne to bargain with the Union[1] is not factually supported by the record and will not be enforced.

Hawthorne provides maintenance services on military aircraft under a contract with the United States. An organizational campaign was begun by the Union in March 1965. On April 6, 1965 a Union representative sent Hawthorne a letter claiming to represent a majority of the company employees in a unit consisting of all production and maintenance, inspectors, and material employees including leadmen and demanding bargaining recognition. The Union's claimed majority status was based on signed authorization cards from fifty-four of Hawthorne's employees in an appropriate unit of ninety. In response to said letter and on April 8, 1965 counsel for Hawthorne sent a reply letter questioning the existence of a majority in an appropriate unit and suggesting that the question be resolved by filing a petition with the Board. Pursuant thereto and on April 15, 1965 the Union filed a petition with the Board for an election. A hearing was held and as a result the unit was modified to exclude leadmen and crew chiefs[2] and an election ordered. After Hawthorne's petition to the Board to review the appropriateness of the unit as determined by the regional director was denied, an election was held in which the Union lost by a vote of 44 to 29. The Union then filed a petition with the Board alleging

1. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO.

2. The unit as approved by the trial examiner and adopted by the Board included
   All production and maintenance employees including quality control employees, plant supply section, production control section, central supply section, warehousemen and delivery truck driver at the Employer's Fort Sill, Oklahoma, installation; excluding office clerical employees, leadmen, crew chiefs, supervisors, guards and watchmen as defined in the Act.

the commission of unfair labor practices by Hawthorne in violation of sections 8(a) (1) and 8(a) (5) of the Act.

After conducting a prolonged hearing on the Union charges, the Trial Examiner sustained the charge of 8(a) (1) violations and made appropriate findings, conclusions and recommendations to the Board. The Examiner also found, however, that the appropriate bargaining unit of Hawthorne consisted of 88 employees and that the Union had but 44 valid and signed authorization cards. The Examiner concluded that the Union had thus failed to establish a majority status and that accordingly Hawthorne had no duty to recognize the Union as an authorized bargaining agent and recommended that the 8(a) (5) charge be dismissed. On review, the Board adopted the findings, conclusions and recommendations of the Examiner except as to the number of employees in the appropriate unit and the resultant conclusion drawn from that finding. In this regard the Board found that the Examiner had inadvertently included within the 88 employees constituting the appropriate unit four employees conceded by the parties to be not within the unit. The Board then concluded that the Union had a majority of valid authorization cards and that in view of numerous 8(a) (1) violations that Hawthorne had not acted in good faith in failing to recognize the Union but had done so only to gain time to subvert the Union's majority and consequent unionization. The claimed 8(a) (5) violation is so premised and, of course, has activated Hawthorne into a many-pronged attack upon the Board decision. Included among Hawthorne's claims to error [3] is the contention that

the record shows that fourteen of the Union's authorization cards were obtained through the efforts of supervisory personnel and were thus invalid. The decision of the Board contains no reference to this contention.

■ General Counsel does not dispute the rule that when a supervisor is the moving force in obtaining an authorization card such card is not valid. Such is, indeed, the Board rule. Steele Apparel Co. and Southern Missouri-Arkansas District Council International Ladies' Garment Workers' Union, AFL-CIO, 172 N.L.R.B. No. 95; Thomas Spring and Manufacturing Corporation and Production, Maintenance and Service Employees Union, Local 3, 172 N.L.R.B. No. 67. Rather, General Counsel argues that consideration of the validity of 12 of such cards is not an issue properly before this court because the issue was not specifically enough presented to the Board. Section 10(e), National Labor Relations Act; 29 C.F.R. § 102.46 (b, c). We need not reach this procedural defense because it is admitted that the validity of the remaining two cards was directly challenged before the Board. One such card, that of the employee Garner, was solicited by Supervisor Rury who himself had signed a card and was excluded from the unit by the Board because of his authority. General Counsel is willing to assume the invalidity of Garner's card. The remaining card, that of employee Grumann, was solicited by one Moates, a leadman, who told Grumann that if the Union were voted in he, Grumann, could be discharged if he were not a member. Although the Board now argues that Moates was not a supervisor, we consider the argument to

---

3. Hawthorne also attacks the present appropriateness of the unit, the extension of the 8(a) (1) violations to a conclusion of bad faith in view of the total circumstances and confusion in setting the unit, and the use of a dual purpose card asserted to be subjectively confusing and ambiguous in intent to the individual employees. The use of authorization cards

to force Union recognition is presently before the Supreme Court in a series of cases involving these inherent complexities. Certiorari has been granted in NLRB v. Sinclair Co., 1 Cir., 397 F.2d 157; NLRB v. Gissel Packing Co., 4 Cir., 398 F.2d 336; and NLRB v. Heck's, Inc., 4 Cir., 398 F.2d 337.

be self-denying in view of the record stipulation:

"The parties have stipulated and we find that the leadmen are supervisors within the meaning of Section 2(11) of the Act, and we shall exclude them from the appropriate unit." Regional Director's Decisions & Direction of Election.

Since the status of Rury and Moates is not unclear [4] it follows that the Union did not have a majority authorization and Hawthorne had no duty to bargain. NLRB v. Heck's, Inc., 4 Cir., 386 F.2d 317.

Enforcement will be granted in part and denied in part.

4. Cf. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, AFL–CIO, v. NLRB, D.C.Cir., 124 U.S.App.D.C. 215, 363 F.2d 702, cert. denied sub nom. Aero Corp. v. NLRB, 385 U.S. 973, 87 S.Ct. 510, 17 L.Ed.2d 436.